**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Terry Lynn STINSON, Defendant–Appellant.**

**No. 90–3711.**

United States Court of Appeals, Eleventh Circuit.

Oct. 4, 1991.

William M. Kent, Asst. Federal Public Defender, Jacksonville, Fla., for defendant-appellant.

Ronald T. Henry, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before JOHNSON and EDMONDSON, Circuit Judges, and DYER, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

In this case, we decide whether a conviction for possession of a firearm by a felon qualifies as a "crime of violence" for purposes of enhancing a defendant's sentence under the "career offender" provisions of the Sentencing Guidelines. We conclude that illegal weapons possession by a convicted felon is inherently a "crime of violence" as defined by the Guidelines, and we affirm the sentence imposed by the district court.

I.

On October 31, 1989, defendant Terry Lynn Stinson robbed a bank in Florida. A few days later, defendant was arrested. At the time of his arrest, defendant was in possession of three inert hand grenades, ammunition, a number of components for the construction of bombs, a razor knife, and a sawed-off shotgun.

Defendant pled guilty to a five-count indictment charging him with bank robbery, in violation of 18 U.S.C. § 2113(a), (d), possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g) & 924(a)(2), (e),[1] use of a firearm during, and in relation to, a crime of violence, in violation of 18 U.S.C. § 924(c), weapons registration violation, in violation of 26 U.S.C. §§ 5861(d) & 5871, and transportation of stolen property through interstate commerce, in violation of 18 U.S.C. § 2312. Defendant had been earlier convicted of three violent felonies. In July 1990, defendant was sentenced under the career offender guidelines to 365 months imprisonment, consecutive to the mandatory minimum five-year imprisonment for use of a firearm during commission of a crime of violence.

II.

*A. Career Offender Guidelines*

1.

This case is controlled by the career offender provisions, sections 4B1.1 and

1. Section 922(g) states in pertinent part:
(g) It shall be unlawful for any person—
(1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
18 U.S.C. § 922(g).

4B1.2, of the Guidelines.[2] Under section 4B1.1, a defendant is a career offender if:

(1) the defendant was at least eighteen years old at the time of the offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. Defendant argues that the district court's use of his possession of a firearm by a convicted felon conviction as the predicate "crime of violence" offense for career offender purposes under U.S.S.G. § 4B1.1, was improper. Defendant argues that possession of a firearm by a convicted felon is not a "crime of violence."

Section 4B1.2 defines the term "crime of violence," borrowing language from 18 U.S.C. § 924(e) of the Armed Career Criminal Act:

(1) The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of injury to another.*

U.S.S.G. § 4B1.2 (1989) (emphasis added).

In the application notes to section 4B1.2, the Sentencing Commission has listed a number of crimes fitting this definition and has noted that other offenses are included where

(A) that offense has an element the use, attempted use, or threatened use of physical force against the person of another, or

(B) *the conduct set forth in the count of which the defendant was convicted* involved use of explosives or, *by its nature, presented a serious potential risk of physical injury to another.*

U.S.S.G. § 4B1.2, comment. (n. 2) (emphasis added).

The defendant's weapons possession conviction is not among those specifically listed in section 4B1.2 or its application notes, and does not have as a statutory element "the use, attempted use, or threatened use of physical force" as provided in section 4B1.2(1)(i) and application note 2(A). We therefore consider whether the weapons possession conviction satisfies the requirements of section 4B1.2(1)(ii) and application note 2(B).

2.

Defendant argues that we cannot look beyond the generic definition of the offense to determine whether weapons possession by a felon is a "crime of violence" under section 4B1.2(1)(ii) and application note 2(B). In support, defendant cites *United States v. Gonzalez-Lopez,* 911 F.2d 542, 547 (11th Cir.1990), in which we held that the term "crime of violence," as used in an *earlier* version of the career offender guidelines, "contemplate[d] a generic category of offenses which typically present the risk of injury to a person or property irrespective of whether the risk develops or harm actually occurs."

Such a categorical analysis certainly is allowed under the amended guidelines and application notes. Section 4B1.2(1)(ii), as amended, provides that an offense constitutes a "crime of violence" where it "involves conduct that presents a serious potential risk of physical injury to another." Application note 2, as amended, clarifies that an offense qualifies if "*by its nature*" that offense involves "a serious potential risk of physical injury to another." Under the amended guideline and application note,

2. Section 4B1.2 and its application notes were amended effective November 1, 1989. Because defendant was sentenced after that date, the amended guidelines and application notes apply. *See* 18 U.S.C. § 3553(a)(5) (sentencing courts are to apply the guidelines and policy statements "that are in effect on the date the defendant is sentenced"). We address further the applicability of the amended guidelines *infra* at sections II(A)(2) & (C).

then, a sentencing court need not consider the facts underlying a particular offense, assuming such an inquiry is permissible, if the offense "by its nature" presents a serious risk of violence—the offense is a "crime of violence" whether or not the violence actually materialized in the specific conduct with which defendant is charged. Because we conclude that a categorical analysis is at least *permissible* under the amended guidelines, and because (as discussed *infra*) we think illegal firearm possession by a convicted felon "by its nature" imposes "a serious potential risk of physical injury," we need not decide today whether *Gonzalez-Lopez* should be applied to the guidelines and application notes as amended to *require* only a categorical analysis.[3]

*B. Possession of a Firearm by a Felon as a "Crime of Violence"*

We must next consider, then, whether possession of a firearm by a convicted felon constitutes a "crime of violence" because the offense "by its nature present[s] a serious potential risk of physical injury to another." We believe it does.

The Ninth Circuit has already concluded that, under the earlier version of section 4B1.2 and its application notes, "the offense of being a felon in possession of a firearm by its nature poses a substantial risk that physical force will be used against person or property." *United States v. O'Neal,* 910 F.2d 663, 667 (9th Cir.1990). In support the *O'Neal* court looked to the legislative history underlying 18 U.S.C. § 922(g),[4] including a statement by the original sponsor of that legislation to the effect that felons "may not be trusted to possess a firearm without becoming a threat to society." *Id.* (quoting 114 Cong. Rec. 14,773 (1968) (statement of Sen. Long)).

In a similar way, another court decided that, in the context of a pretrial detention hearing, illegal firearm possession by a felon always amounts to a "crime of violence," as defined by the Bail Reform Act.[5]

3. We note, however, that the holding in *Gonzalez-Lopez* is distinguishable on a number of grounds:

First, the amended version of § 4B1.2 applicable here takes its definition of the term "crime of violence" from a different source—18 U.S.C. § 924(e)—than the earlier version.

Second, the holding in *Gonzalez-Lopez* was influenced by the practical difficulties and potential unfairness to the defendant of allowing the sentencing court to determine, in an ad-hoc mini-trial, the actual facts underlying *prior* convictions. *See Gonzalez-Lopez,* 911 F.2d at 547–48. Here, because the offense at issue is the offense of conviction, not a prior conviction, the district court would look only to conduct relevant to the instant proceedings, much like the sentencing court normally does in the course of sentencing a defendant pursuant to the Guidelines. *See* U.S.S.G. § 1B1.3(a)(1) (sentencing court may consider all conduct that occurred during the commission of the offense of conviction for which the defendant would be otherwise accountable).

Finally, the amended application note accompanying § 4B1.2 contains language that seems expressly to authorize sentencing courts to find crimes of violence even where the offense does not "by its nature" impose a serious risk of physical injury. *See* U.S.S.G. § 4B1.2, comment. (n. 2) (courts may look to "conduct set forth in the count of which the defendant was convicted" in deciding whether offense "presented a serious potential risk of physical injury to another") U.S.S.G. § 4B1.2, comment. (n. 2).

For these same reasons, the courts that have interpreted § 4B1.2 and its application notes—as amended—have allowed sentencing courts in some circumstances to look beyond the generic, categorical definition of an offense to the particular facts "set forth in the count of which the defendant was convicted." *See United States v. John,* 936 F.2d 764 (3d Cir.1991); *United States v. Cornelius,* 931 F.2d 490, 492–93 (8th Cir.1991); *United States v. Walker,* 930 F.2d 789, 793–94 (10th Cir.1991); *United States v. Tidswell,* 767 F.Supp. 11 (E.D.Me.1991); *United States v. Coble,* 756 F.Supp. 470, 474 (E.D.Wash.1991); *United States v. Hernandez,* 753 F.Supp. 1191, 1196 (S.D.N.Y.1990).

4. In *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court similarly relied on legislative history to clarify what burglary-related offenses Congress intended to be included as "crimes of violence" when it specifically listed "burglary" as a violent crime for purposes of enhancing sentences pursuant to 18 U.S.C. § 924(e). *See id.* at ——, 110 S.Ct. at 2149–54.

5. The Bail Reform Act defines "crime of violence" in part as follows:

> . . . any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property

*United States v. Jones,* 651 F.Supp. 1309 (E.D.Mich.1987). The court in *Jones* offered four independent justifications for its conclusion that the offense of weapons possession by a felon "by its nature" involves a "substantial risk of physical force": (1) felons are more likely to use firearms in an irresponsible manner; (2) felons are acutely aware that such activity is illegal, making the act of weapons possession a knowing disregard for legal obligations imposed upon them; (3) felons are more likely to commit crimes, enhancing the likelihood the weapon will be used in a violent manner; and (4) illegal weapons possession is an ongoing offense that often is not ended voluntarily, but only through law enforcement intervention, thus "[t]he character of the crime cannot be measured solely as of the moment of discovery and arrest." *Jones,* 651 F.Supp. at 1310. *See also United States v. Phillips,* 732 F.Supp. 255, 262–63 (D.Mass.1990); *United States v. Johnson,* 704 F.Supp. 1398 (E.D.Mich.1988).

We find further support for the conclusion that the offense of weapons possession by a felon "by its nature" imposes a "serious potential risk of injury" in the legislative history behind 18 U.S.C. § 924(e), which streamlined the categories of persons unqualified to receive or possess firearms and established a stiff mandatory minimum punishment.[6] Section 924(e) was included as part of the Federal Firearms Owners Protection Act of 1986, which relaxed federal rules regarding private sales of firearms among sportsmen and collectors while simultaneously "enhanc[ing] the ability of law enforcement to fight *violent crime* and narcotics trafficking." H.R.Rep. No. 495, 99th Cong., 2d Sess. 1 (1986), U.S.Code Cong. & Admin.News 1986, 1327 (report from House Committee on the Judiciary) (emphasis added). Introducing the measure on the floor of the Senate, its sponsor Senator McClure outlined what he considered unduly aggressive federal enforcement of private weapons sales among collectors and sportsmen, and concluded, "We need to redirect law enforcement efforts away from what amounts to paperwork errors and *toward willful firearms law violations that will lead to violent crime; for example,* selling stolen guns, or *selling firearms to prohibited persons.*" 131 Cong.Rec. S9102 (daily ed. July 9, 1985) (statement of Sen. McClure) (emphasis added); *see also id.* at 9113 (statement of Sen. Laxalt) ("[This act] seeks to direct law enforcement efforts toward those firearms transactions most likely to contribute to *violent crime.*") (emphasis added); 131 Cong.Rec. S8700 (daily ed. June 24, 1985) (statement of Sen. Matsunaga) ("Handguns insofar as I am concerned, ... are intended for use for one purpose only; that is to kill other human beings. Whatever controls we can impose upon the sale and distribution of those weapons of death, I say let us go to it. I am relieved by the language of S.49 to the extent that it prohibits firearm and ammunition possession, receipt, or transportation in commerce by convicted felons....").

Like the legislative body that criminalized weapons possession by convicted felons, we conclude that defendant's offense of conviction "by its nature" imposed a "serious risk of physical injury," whether or not injury results at the exact moment of arrest or anytime during defendant's ongoing possession of the firearm.[7] Be-

of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4).

6. Defendant's indictment count for weapons possession alleged violations of both 18 U.S.C. § 922(g) and 18 U.S.C. § 924(e).

7. In reaching this result, we are unconstrained by dicta in the recent panel opinion in *United States v. Briggman,* 931 F.2d 705 (11th Cir.1991) (non-argument calendar). In *Briggman,* a panel of this court upheld an upward departure from the Guidelines in a case involving a conviction for weapons possession by a felon. By way of explaining the district court's decision to apply the Armed Career Criminal Act instead of the career offender guidelines for purposes of sentence enhancement, the panel said, "[T]he career offender provisions do not apply in this case because [the defendant's] crime was not one of violence." *Id.* at 710. The words of an opinion are not, in themselves, the holding of the case; the decision and the facts define a case's precedential authority. In *Briggman,* the defendant was sentenced pursuant to the Armed Career Criminal Act, not the career offender provisions of the Sentencing Guidelines. Be-

cause this offense always constitutes a "crime of violence," a convicted felon found guilty of firearms possession is automatically subject to sentence enhancement under the career offender provisions of the Sentencing Guidelines. A sentencing court need not look to the "conduct set forth in the count from which the defendant was convicted," if such an inquiry is permissible,[8] to determine whether a "crime of violence" has been committed.

*C. Ex Post Facto Application*

Defendant contends that application of section 4B1.2, as amended *after* his offense but *before* sentencing, violates the constitutional protection against ex post facto laws. As noted *supra,* we are bound as a general matter by the specific instruction from Congress to consider the Sentencing Commission's guidelines and policy statements "that are in effect on the date the defendant is sentenced." 18 U.S.C. § 3553(a)(5); *see also United States v. Russell,* 917 F.2d 512, 514 n. 2 (11th Cir. 1990), *cert. denied,* — U.S. —, 111 S.Ct. 1427, 113 L.Ed.2d 479 (1991); *United States v. Marin,* 916 F.2d 1536, 1538 & n. 2 (11th Cir.1990) (per curiam); *United States v. Gonzalez-Lopez,* 911 F.2d 542, 546 n. 3 (11th Cir.1990).[9] This circuit has made an exception, however, where the effect of applying an amended guideline "would be to subject a defendant to an increased sentence," thereby implicating the Constitution's prohibition on laws having ex post facto consequences. *United States v. Worthy,* 915 F.2d 1514, 1516 n. 7 (11th Cir.1990) (citing *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987)).

Defendant argues that under the *Gonzalez-Lopez* precedent, discussed *supra,* we would have been limited to a "categorical analysis" of the offense of conviction to determine whether it constitutes a "crime of violence" for career offender purposes. *See Gonzalez-Lopez,* 911 F.2d at 547 (offense is considered "crime of violence" if it "typically present[s] the risk of injury to a person or property irrespective of whether the risk develops or harm actually occurs"). But, our conclusion that illegal firearm possession by a felon " 'by its nature' impose[s] a 'serious risk of physical injury,' whether or not that risk materialized at the exact moment of arrest, or anytime during defendant's ongoing possession of the firearm" also satisfies the *Gonzalez-Lopez* standard. Defendant's sentence was not enhanced as a result of our application of the newer guidelines and application notes; the Ex Post Facto Clause is not implicated.

III.

Because defendant's instant conviction for weapons possession by a felon is a "crime of violence," as defined in section 4B1.2 and its application notes, the district court properly enhanced defendant's sentence under the career offender provisions of the Sentencing Guidelines. We AFFIRM.

cause the excerpted statement—when read in context—was unnecessary to the outcome and was merely an explanation for an action by the district court that was unchallenged on appeal, we are not bound by the language cited from *Briggman.*

8. *See supra* section II(A)(2).

9. The panel opinion in *United States v. Simmons,* 924 F.2d 187 (11th Cir.1991), is not to the contrary. In that case, the panel acknowledged the passage of a new guideline that would have covered the offense charged, but the panel did not apply the guideline, ostensibly because "only those guidelines in effect at the time appellant committed the offense are applicable in sentencing appellant." *Id.* at 189 n. 1 (citing *United States v. Bradley,* 905 F.2d 359, 360 (11th Cir.1990)). The offense in *Simmons* was committed in November 1988, and according to the briefs in that case, the defendant was sentenced in September 1989. But, the new guideline at issue did not take effect until November 1990, more than a year *after sentencing.* As a result, *Simmons* is consistent with the general rule that sentencing courts are to apply the guidelines and policy statements in effect at the time of *sentencing.* The case relied upon by the *Simmons* panel supports this conclusion. In *United States v. Bradley,* the panel held that amendments to the guidelines taking effect *after sentencing* were inapplicable. *See Bradley,* 905 F.2d at 360.