[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 28, 2007
THOMAS K. KAHN
CLERK

No. 06-13223
Non-Argument Calendar

_____

D. C. Docket No. 04-00265-CR-JTC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIE EDWARD HILL,
a.k.a. Willie Hill,
a.k.a. Ed Hill,
a.k.a. Edd Hill

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 28, 2007)**

Before TJOFLAT, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Willie Edward Hill was sentenced to 36 months of imprisonment and six

years of supervised release after he pled guilty to six separate counts of knowingly and wilfully distributing less than one gram of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)©) and § 851. Hill appeals his sentence, arguing that the district court erred by adjusting his offense level upward by two levels, pursuant to U.S.S.G. § 4A1.3, after finding that Criminal History Category VI of the Sentencing Guidelines did not adequately take into account Hill's criminal history. Upon review, we discern no error in the district court's decision to depart upward, and, therefore, we AFFIRM.

## I. BACKGROUND

In May 2004 a grand jury charged Hill with six counts of knowingly and wilfully distributing heroin in violation of 21 U.S.C. § 841. The charges stemmed from six separate occasions between July 2003 and September 2003 in which Hill sold heroin to an undercover officer in Atlanta. Citing 21 U.S.C. § 851, the indictment also alleged that Hill had a previous conviction for possession of cocaine. Hill initially entered a plea of not guilty to the charges contained in the indictment.

In September 2004, Hill moved to continue his trial, pending a hearing on his competency. That motion was granted, and the question of Hill's competency to stand trial was referred to a magistrate judge. Both parties submitted evidence

2

concerning Hill's mental health. After a full competency hearing was held, the magistrate judge issued a report and recommendation in which he concluded that Hill was competent to stand trial. After weighing Hill's objections to that report and recommendation, the district court adopted the report and recommendation in full, agreeing that Hill was competent. Thereafter, Hill pled guilty, without a plea agreement, to all six counts contained in the indictment.

Prior to the sentencing hearing, a pre-sentence investigation ("PSI") report was prepared in Hill's case. The PSI assigned Hill a base offense level of 12, as his crime involved the distribution of less than five grams of heroin. See U.S.S.G. § 2D1.1(c)(14). The PSI subtracted two levels from the offense level for Hill's acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a). Hill's resulting offense level was 10.

In reviewing Hill's criminal history for purposes of assigning him a Criminal History Category, the PSI listed approximately 50 prior adult criminal convictions, for a range of offenses, including, among others: larceny; car theft; assault; battery; criminal trespass; driving under the influence; aggravated assault (two convictions); burglary (four convictions); and possession of cocaine (six convictions). The first conviction, for larceny, occurred in 1959, when Hill was 17 years old, and the final conviction, for possession of cocaine, occurred in 2002,

3

when Hill was 60 years old. For those convictions occurring between 1973 and 2002, the PSI set forth the particular facts and circumstances surrounding the conviction.

In assessing this criminal history, the PSI recommended a total of 14 criminal history points for Hill's five cocaine possession convictions that occurred between 1991 and 2002, pursuant to U.S.S.G. § 4A1.1(a)-(b). The PSI also recommended an additional three points for a 1996 car theft conviction, also pursuant to U.S.S.G. § 4A1.1(a), and an additional one point for a 1997 conviction for theft by taking, pursuant to § 4A1.1©). Finally, because Hill committed the present offense within two years following his release from prison on the 2002 cocaine conviction and while still on probation, the PSI added three additional points. See U.S.S.G. §§ 4A1.1(d) and (e). Accordingly, the PSI determined that Hill had a total of 21 criminal history points. Because Hill had more than 13 points, the PSI calculated his Criminal History Category as Category VI. See U.S.S.G. Ch. 5 Pt. A.

With an offense level of 10 and a criminal history category of VI, Hill's recommended sentencing range was 24 to 30 months of imprisonment. The PSI also noted that Hill was subject to a statutory minimum supervised release period of six years. See 21 U.S.C. § 841(b)(1)©). In addition, the PSI indicated that an

4

upward departure under U.S.S.G. § 4A1.3 might be warranted, due to Hill's serious criminal history and the likelihood of recidivism.

Prior to the sentencing hearing, the government moved for an upward departure pursuant to U.S.S.G. § 4A1.3. See R1-44. The government noted that the PSI's criminal history included an additional 43 prior convictions–including serious and violent felonies such as aggravated assault and burglary–for which no criminal history points had been assessed. The government thus argued that the sentencing range prescribed by the Guidelines "[did] not adequately take into account the Defendant's lifelong and extensive prior criminal history involving violent crimes," nor did it "take into account the high likelihood that the Defendant will commit these same crimes again when released." R1-44 at 2.

At the sentencing hearing, the district court agreed with the government's argument that Hill's Criminal History Category of VI was "understated" in light of his "extensive record." R5 at 9. In light of the court's finding that Hill's criminal history was "extensive" and was not adequately reflected in the recommended prison sentence of 24 to 30 months, id., as well as the court's finding that the likelihood of recidivism was high in Hill's case, the court granted the government's motion for an upward departure pursuant to U.S.S.G. § 4A1.3. Accordingly, the court chose to make an upward adjustment of two levels, from

offense level 10 to offense level 12, which placed Hill's sentencing range at 30 to 37 months of imprisonment. The court then imposed a sentence of 36 months of imprisonment, followed by a term of supervised release of six years. Hill now appeals, arguing that the district court committed error in making an upward departure of two levels in imposing his sentence.[1]

## II. DISCUSSION

Section 4A1.3(a)(1) of the Sentencing Guidelines permits a district court to make an upward departure in imposing a sentence on a defendant "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." In determining whether such a departure is warranted, the court may rely, among other things, on prior criminal sentences that were "not used in computing the criminal history category." See U.S.S.G. § 4A1.3(a)(2)(A).

---

[1] Hill has since completed his 36 month sentence; according to the Bureau of Prisons, he was released in December 2006. That does not render his appeal moot, however, because a decrease in Hill's sentence on remand could affect the term of his supervised release. The term of Hill's supervised release would have begun to run upon his release from prison. If Hill were to receive a lesser sentence on remand, the beginning date for the term of supervised release would have to be pushed back to the date Hill should have been released. See United States v. Huang, 977 F.2d 540, 542 n.1 (11th Cir. 1992) (per curiam). Accord United States v. Cottman, 142 F.3d 160, 165 (3d Cir. 1998) ("[I]f we were to find an error in the application of the [] enhancement, the appropriate sentencing range would be reduced . . . . This reduction would likely merit a credit against [the defendant]'s period of supervised release for the excess period of imprisonment to which [the defendant] was subjected.").

There are two types of upward departures under the Sentencing Guidelines: a horizontal departure, in which a defendant's Criminal History Category is increased or decreased; and a vertical departure, in which a defendant's criminal offense level is increased or decreased. See United States v. Taylor, 88 F.3d 938, 947 (11th Cir. 1996). Hill's case involves the latter type, in that the sentencing judge increased his offense level from level 10 to level 12. Moreover, Hill's case presents the type of scenario in which the district court's vertical departure was made *after* Hill had already been determined to be subject to the maximum Criminal History Category of VI. These types of upward adjustments are expressly permitted under the Guidelines. See U.S.S.G. § 4A1.3, cmt. n.2(B) ("In the case of an egregious, serious criminal record in which even the guideline range for Criminal History Category VI is not adequate to reflect the seriousness of the defendant's criminal history, a departure above the guideline range for a defendant with Criminal History Category VI may be warranted."). We have held that, in such circumstances, the district court is not bound to make step-by-step findings as it travels up the vertical offense level axis, so long as its upward departure is reasonable under the circumstances. See United States v. Smith, 289 F.3d 696, 711 (11th Cir. 2002); United States v. Dixon, 71 F.3d 380, 382-83 (11th Cir. 1995).

Hill contends that the district court erred in making its upward departure, in

that a large number of the crimes indicated in his criminal history were old and the majority of the offenses in his record were not violent and not particularly serious in nature.[2] He also argues that he is over 60 years old and suffers from mental handicaps, such that the court erred in concluding that he bore a high likelihood of criminal recidivism.

Appellate review of sentencing departure cases generally consists of three steps. First, we must "determine whether the guidelines . . . preclude a district court from relying upon [a particular factor] as a basis for [its] departure." United States v. Simmons, 924 F.2d 187, 191 (11th Cir. 1991). As this inquiry involves the district court's interpretation of the Guidelines, it is a question of law that we review de novo. Id. "Second, we must determine whether there exists sufficient factual support for the departure." Id. Because this review implicates the district court's role as a fact-finder, we will not reverse its factual findings unless clearly erroneous. United States v. Ellis, 419 F.3d 1189, 1191 (11th Cir. 2005) (quoting United States v. Jordi, 418 F.3d 1212, 1214 (11th Cir. 2005)). Finally, we must ask: "if the circumstance was properly taken into account [in deciding to depart],

---

[2] The Comment to § 4A1.3 states that an assessment of the "seriousness" of a defendant's criminal record involves an evaluation of the "nature of the prior offenses," rather than their number. U.S.S.G. § 4A1.3, cmt. n.2(B). Hill contends that many of the crimes set forth in his record were "nuisance-type offenses like criminal trespass, small time property offenses. . . and low-level street drugs offenses," Appellant's Br. at 19, such that his criminal history was not so "serious" as to warrant a § 4A1.3 enhancement.

was the extent of the departure from the guideline range reasonable?" Simmons, 924 F.2d at 191 (citation, alteration, and internal quotations omitted). See also United States v. Simmons, 368 F.3d 1335, 1341-42 (11th Cir. 2004).

Applying the first step of that analysis, the Sentencing Guidelines expressly permit a district court to consider prior criminal sentences that were "not used in computing the criminal history category" in assessing whether an upward departure is warranted. See U.S.S.G. § 4A1.3(a)(2)(A). Thus, the district court did not err in considering Hill's 43 prior convictions and sentences–crimes for which no Criminal History Category points had been assessed–and in opting to depart upward based on those crimes, due to the court's determination that Hill's Criminal History Category (VI) under-represented his actual criminal history. Because nothing in the record indicates that the district court "relied on any impermissible factors in departing from the guidelines . . . , [w]e conclude that the first prong of the departure analysis is satisfied." Simmons, 924 F.2d at 192.[3]

Hill argues that the district court's reliance on the prior convictions set forth

_____

[3] Although it is true that the PSI also included a lengthy list of prior arrests with no actual charges or convictions described therein, there is no evidence that the district court improperly relied upon those arrests in opting to depart upward. While the court did not expressly differentiate between Hill's actual convictions and his other (non-convicted) arrests when it stated that Hill had an "extensive" criminal record, R5 at 9, the court's statement was likely referring to Hill's 43 convictions–which were undisputed–rather than to Hill's other, non-convicted arrests. In any event, there is no evidence that the district court improperly based its § 4A1.3 upward departure on these non-convicted arrests rather than on the prior criminal convictions.

9

in the PSI was analogous to the court's relying on an arrest record.  We have previously held that a district court may not consider an arrest record alone in opting to depart upward under U.S.S.G. § 4A1.3.  See U.S.S.G. § 4A1.3(3); United States v. Adudu, 993 F.3d 821, 824 (11th Cir. 1993).  However, the PSI's listing of Hill's prior convictions was more thorough than a standard arrest record; indeed, of the convictions listed in the PSI, 16 of them contained detailed summaries, culled from police reports, of the facts and circumstances of these crimes.  Therefore, as in United States v. Williams, the criminal history in the PSI–on which the court relied–was "far more in depth than mere arrest records," as it "provide[d] a summary of the facts surrounding most of the incidents."  989 F.2d 1137, 1142 (11th Cir. 1993) (per curiam) (citation and internal quotations omitted).  Because this was not a stand-alone arrest record but was rather reliable information containing the facts relative to Hill's prior criminal conduct, the district court properly considered it in contemplating a departure.  Id.

In short, we discern no error in the court's consideration of these prior crimes, crimes which otherwise played no role in the calculation of Hill's Criminal History Category.  There is no evidence that the district court's decision was based on factors that had already been fully considered in establishing the applicable guideline range.  See United States v. Santos, 93 F.3d 761, 763 (11th Cir. 1996)

10

(per curiam). The court's consideration of these earlier criminal sentences was consistent with § 4A1.3.

As to the second prong–whether there exists sufficient factual support for the departure–we must inquire whether the district committed clear error in finding that Hill's particular criminal history was "extensive"; that the crimes contained therein were of a violent and serious nature; and that Hill's particular case bore a likelihood of recidivism. R5 at 9. We conclude that these determinations were proper.

Hill's criminal history–which was set forth in the PSI and was undisputed– reflected approximately 50 separate adult criminal convictions for a range of offenses, including, among others: larceny; assault; battery; criminal trespass; driving under the influence; burglary; and aggravated assault (two separate convictions, including one that involved the infliction of a gunshot wound and one that involved an alleged sexual assault). Contrary to Hill's contentions, these were not merely nuisance-type crimes, and, moreover, a number of them were violent in nature. While Hill points out that some of these convictions were rather old, there is no prohibition against a court's considering convictions that are remote in time in deciding whether to depart upward under 4A1.3. See Williams, 989 F.2d at 1141.

In sum, we cannot find that the district court committed clear error in concluding that Hill's history was "extensive," R5 at 9, and in thus determining that the seriousness of this criminal history was not reflected in Hill's Criminal History Category of VI. See Santos, 93 F.3d at 763 (affirming upward departure of two levels where the defendant's Category VI score "did not reflect several other prior convictions or conduct, including a burglary and conduct in connection with an aggravated burglary"); see also United States v. Mellerson, 145 F.3d 1255, 1257 (11th Cir. 1998) (per curiam) (affirming three-level upward departure where the defendant's criminal history points tripled the number necessary for a Criminal History VI). Nor can we conclude that the district court committed factual error in concluding that Hill's particular case bore a high likelihood of recidivism. To be sure, Hill's extensive history of criminality supports the district court's ultimate finding of a likelihood "that he would commit crimes in the future." See Williams, 989 F.2d at 1141 (citation and internal quotations omitted).

Finally, we must assess whether the extent of the court's upward departure under U.S.S.G. § 4A1.3 was reasonable. We conclude that it was. In this case, the court assigned Hill an additional two offense levels, from level 10 to level 12, explaining it was doing so to reach a resulting sentence of 36 months (rather than 24 to 30 months), as the court believed that a 36 month sentence was more

"appropriate" and "reasonable," "given all the facts and circumstances" in Hill's case. R5 at 9. Those unique circumstances included an extensive, nearly fifty-year criminal history, one which was not adequately reflected in the resulting Sentencing Guidelines range of 24 to 30 months. In light of the evidence, a district court could quite reasonably have concluded that, based on Hill's sordid criminal history, he needed to be incarcerated for a period of time longer than that recommended for a typical criminal with a total offense level of 10 and a Criminal History of VI. We cannot say that the district court' s decision to increase Hill's offense level by two additional levels, pursuant to § 4A1.3, was unreasonable based on the facts of his case. This is especially so given the fact that, in upward departures above Category VI, a district court is entitled to "use its discretion in determining which offense level corresponds to the appropriate sentencing range for a given defendant." Dixon, 71 F.3d at 383. Finally, it bears pointing out that Hill's sentence of 36 months was well below the statutory maximum provided for the offense,[4] thereby bolstering our conclusion that the departure was reasonable. See Taylor, 88 F.3d at 948 (noting that "[t]he sentence imposed . . . was well under the statutory maximum" and affirming the sentencing departure as reasonable).

---

[4] The statutory maximum as to each of Hill's offenses is 30 years of imprisonment. 21 U.S.C. § 841(b)(1)(C).

13

### III. CONCLUSION

In conclusion, having reviewed the record, we discern no error in the district court's decision to depart upward by an additional two levels pursuant to § 4A1.3, based on its determination that the seriousness of Hill's criminal history and his likelihood of recidivism were not adequately reflected in his Criminal History Category of VI. Accordingly, Hill's sentence is **AFFIRMED.**