*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0077p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

       *Plaintiff-Appellant.*

      *v.*

OSCAR FLORES,

       *Defendant-Appellee.*

No. 06-1152

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-81122—Avern Cohn, District Judge.

Argued: January 24, 2007

Decided and Filed: February 23, 2007

Before: GUY, SUHRHEINRICH, and GRIFFIN, Circuit Judges.

---

### COUNSEL

**ARGUED:** Janet L. Parker, ASSISTANT UNITED STATES ATTORNEY, Bay City, Michigan, for Appellant. Douglas R. Mullkoff, Ann Arbor, Michigan, for Appellee. **ON BRIEF:** Janet L. Parker, ASSISTANT UNITED STATES ATTORNEY, Bay City, Michigan, for Appellant. Douglas R. Mullkoff, Ann Arbor, Michigan, for Appellee.

---

### OPINION

---

GRIFFIN, Circuit Judge. Oscar Flores was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The government appeals the district court's imposition of a sentence of 100 months of incarceration in connection with Flores's conviction. The government argues that the district court erred in concluding that Flores was ineligible to be sentenced pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and in failing to apply enhancements under the Sentencing Guidelines because the jury did not make findings on those matters. For the reasons set forth below, we hold that the district court correctly ruled that Flores's prior conviction for carrying a concealed weapon was not a conviction for a "violent felony" under the ACCA. However, we reverse the district court's failure to make findings of fact concerning possible sentence enhancements and remand for resentencing.

1

I.

On January 23, 2001, a federal grand jury returned a superseding indictment against Flores, charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The indictment alleged that "at the time of this offense, the defendant had two previous convictions by courts for serious drug felonies, and a conviction for a violent felony, committed on occasions different from one another, in violation of Title 18, United States Code, sections 922(g)(1) and 924(e)."

On April 9, 2002, the government filed a Notice Specifying Oscar Flores as an Armed Career Criminal. The notice alleged that Flores was subject to the sentence enhancement provision of 18 U.S.C. § 924(e), and identified the following four previous convictions that the government contended are predicate offenses under § 924(e):

1. On or about November 2, 1970, Oscar Flores was adjudicated in Saginaw County, State of Michigan, for Assault with a Knife, in violation of the laws of the State of Michigan, and that adjudication constitutes a conviction under Title 18, United States Code, section 924(e)(2)(B)(ii) and (C);

2. On or about January 12, 1977, Oscar Flores was convicted in Saginaw County, State of Michigan, of Delivery of Heroin, in violation of the laws of the State of Michigan, which is also a conviction under Title 18, United States Code, section 924(e)(2)(A)(ii);

3. On or about December 9, 1987, Oscar Flores was convicted in Saginaw County, State of Michigan, of Carrying a Concealed Weapon, in violation of the laws of the State of Michigan, which is also a conviction under Title 18, United States Code, section 924(e)(2)(B)(i);

4. On or about December 28, 1987, Oscar Flores was convicted in U.S. District Court, Eastern District of Michigan, Northern Division, of Distribution of Heroin in violation of the laws of the United States, which is also a conviction under Title 18, United States Code, section 924(e)(2)(A)(i).

On May 23, 2002, a jury found Flores guilty of being a felon in possession of a firearm. The Presentence Investigative Report ("PSR") scored Flores under the Guidelines at offense level 33, criminal history VI, and recommended an imprisonment range of 235 to 293 months. With regard to the offense level, Flores received a base offense level of 24, a two-point enhancement because the firearm involved in the underlying offense was stolen, a four-point enhancement because Flores possessed the firearm in conjunction with the separate offense of "Fleeing and Eluding," a two-point enhancement for obstruction of justice, and a one-point enhancement as an armed career criminal under the ACCA.

The district court initially held two sentencing hearings, as the parties disputed whether Flores's 1970 conviction as a juvenile for assault with a knife should properly be considered for purposes of classification under the ACCA. The district court concluded that Flores's 1970 conviction was a predicate offense under the ACCA, and sentenced Flores to a custody term of 235 months.

On appeal, we vacated Flores's sentence on the ground that the district court erred in including Flores's juvenile conviction for assault with a knife as a predicate offense under the ACCA. *United States v. Flores*, 118 F. App'x 49 (6th Cir. 2004) (per curiam) (unpublished). We remanded Flores's case to the district court for resentencing and further consideration of whether Flores's December 19, 1987, conviction for carrying a concealed weapon counts as a predicate

offense under the ACCA.  *Id.* at 53-54.  We noted that, although a prior panel of this court had affirmed an Eastern District of Michigan opinion which held that carrying a concealed weapon is not a violent felony under the ACCA, the panel's decision was unpublished and, therefore, not binding.  *Id.* at 54 n.5 (citing *United States v. Johnson*, 704 F. Supp. 1403, 1407 (E.D. Mich. 1989), *aff'd per curiam*, 900 F.2d 260 (6th Cir. 1990)).

On remand, the district court held two hearings on April 1, 2005, and October 11, 2005, respectively, to determine whether Flores's conviction for carrying a concealed weapon should count as a predicate offense under the ACCA.  Before ruling on that issue, the district court decided, over the government's objection, that the offense level enhancements included in the PSR should not apply in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220  (2005).  With the enhancements no longer applied, Flores's offense level was recalculated to 24, with a resulting sentencing range of 100 to 125 months.

At the October 11 hearing, the district court held that Flores's prior conviction for carrying a concealed weapon was not a predicate offense under the ACCA and sentenced Flores to a term of 100 months of incarceration.  The district court issued a memorandum on November 17, 2005, which clarified the grounds for its sentencing determination and purported to supersede the court's comments at the sentencing hearings.  The court explained its reasoning as follows:

> Carrying a concealed weapon does not involve any actual, attempted, or threatened use of violence.  It merely describes a status of a person that the law forbids.  If being a *felon* in possession of a firearm is not a predicate offense for establishing Armed Career Criminal status, a *non-felon* concealing possession of a weapon should not be either.  Carrying a concealed weapon does not come with the same type or degree of serious potential risk as burglary and arson, and the Court hesitates to greatly expand the list of offenses establishing an Armed Career Criminal to *any* offense that creates a public risk.  Rather than adopt such an incongruous result, the Court adopted the position taken by the Eighth Circuit and the Sixth Circuit's unpublished opinion in *Johnson*, and did not consider Flores an Armed Career Criminal when deciding his sentence.

This timely appeal followed.

## II.

We review de novo the district court's determination that Flores does not qualify as an armed career criminal under the ACCA.  *United States v. Hill*, 440 F.3d 292, 295 (6th Cir. 2006).  In determining whether Flores's conviction for carrying a concealed weapon is a predicate offense under the ACCA, we take a categorical approach, looking "only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions" to determine whether a sentence should be enhanced.  *Taylor v. United States*, 495 U.S. 575, 600 (1990); *United States v. Armstead*, 467 F.3d 943, 947 (6th Cir. 2006).

The ACCA provides, in pertinent part:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1). The government challenges the district court's determination that Flores's December 9, 1987, conviction for carrying a concealed weapon was not a conviction for a "violent felony" under the ACCA, and that Flores was therefore ineligible for the fifteen-year minimum sentence that the ACCA requires.

> The ACCA defines "violent felony" as follows:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that –

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B). Both parties have focused their arguments on § 924(e)(2)(B)(ii), debating whether carrying a concealed weapon "involves conduct that presents a serious potential risk of physical injury to another . . . ."

As the district court noted, there is a circuit split on the issue whether a conviction for carrying a concealed weapon "involves conduct that presents a serious potential risk of physical injury to another" such that it should count as a violent felony under the ACCA. In *United States v. Whitfield*, 907 F.2d 798 (8th Cir. 1990), the Eighth Circuit became the first federal appeals court to address this issue.[1] The *Whitfield* court's discussion of this topic, however, was short and conclusory:

> Whitfield also claims his conviction of carrying a concealed weapon under MO. REV. STAT. § 571.030(1) (1985) is not a violent felony. We agree. Although carrying an illegal weapon may involve a continuing risk to others, the harm is not so immediate as to "present[] a serious risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii); *see also United States v. Johnson*, 704 F. Supp. 1403, 1407 (E.D. Mich. 1989) (carrying a concealed weapon is not a violent felony), *aff'd per curiam*, 900 F.2d 260 (6th Cir. 1990).

*Whitfield*, 907 F.2d at 800.

In *United States v. Hall*, 77 F.3d 398 (11th Cir. 1996), the Eleventh Circuit reached the opposite conclusion. The *Hall* court distinguished the crime of carrying a concealed weapon from the crime of possession of a firearm by a felon, which it had previously held was not a violent felony under the ACCA. *Id.* at 401-02 (*citing United States v. Oliver*, 20 F.3d 415, 418 (11th Cir. 1994)). The court reasoned that the crime of carrying a concealed weapon entails a greater risk of immediate harm than the crime of being a felon in possession of a firearm; to violate Florida's concealed weapon statute, the weapon must be immediately accessible to the defendant, while a felon may violate the felon in possession statute by possessing a firearm constructively. *Id.* at 401-02 n.4.

After careful review of these conflicting cases, and of the parties' briefs, we conclude that the Eighth Circuit's approach in *Whitfield* is the better-reasoned position, as it is consistent with the

---

[1]In *Johnson*, 900 F.2d at 260, we did not discuss the district court's ruling that the defendant's prior conviction for carrying a concealed weapon was not a conviction for a "violent felony" under the ACCA.

text of 18 U.S.C. § 924(e)(2)(B) and our prior interpretations of the ACCA. We, therefore, hold that the crime of carrying a concealed weapon does not involve such "conduct that presents a serious potential risk of physical injury to another" that a conviction under MICH. COMP. LAWS § 750.227 should properly be considered a conviction for a violent felony under the ACCA.**2**

First, the text of 18 U.S.C. § 924(e)(2)(B) suggests that the term "violent felony" does not include a conviction for carrying a concealed weapon. Section 924(e)(2)(B)(ii) identifies "burglary, arson, or extortion, [or] use of explosives" as illustrative examples of conduct that presents "serious potential risk of physical injury" and are properly considered violent felonies. Each of these crimes involves affirmative and active conduct that is not inherent in the crime of carrying a concealed weapon. More tellingly, the statute provides that the *use* – rather than the possession – of explosives is conduct that rises to the level of a violent felony. 18 U.S.C. § 924(e)(2)(B)(ii); *see also United States v. Oliver*, 20 F.3d 415, 418 (11th Cir. 1994).

Second, we also observe that our prior decision in *Orr v. Hawk*, 156 F.3d 651, 652 (6th Cir. 1998), provides some guidance. *Orr* involved a habeas petition by a federal prisoner who sought to receive a reduction in his sentence pursuant to 18 U.S.C. § 3621(e)(1)(C) for participating successfully in a substance abuse program. The Bureau of Prisons ("BOP") denied Orr's petition, reasoning that 18 U.S.C. § 3621(e)(2)(B) provides only that inmates convicted of a "nonviolent offense" may receive a sentence reduction and that Orr was precluded from taking advantage of the sentence reduction because his felon-in-possession conviction was for a crime of violence within the meaning of 18 U.S.C. § 924. *Id.* The BOP pointed to an internal rule that listed all offenses the BOP deemed to be crimes of violence, and which included the felon-in-possession statute. *Id.* Orr filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in federal court, alleging that the BOP had deprived him of his right to early release without due process of law and that the BOP's definition of "crime of violence" conflicted with the United States Sentencing Commission's definition set forth at U.S.S.G. § 4B1.2.

On appeal, we first noted that, because 18 U.S.C. § 3621 does not define "nonviolent offense," we must look to the definition of the term "crime of violence" as set forth in 18 U.S.C. § 924(c)(3) to delineate the meaning of "nonviolent offense." *Id.* at 653.**3** Under the definition set forth in § 924(c)(3), a prisoner was expressly ineligible for early release if his offense was a felony that "had as an element the use, attempted use, or threatened use of physical force against the person

---

**2**We note that a panel of our court considered this issue recently in *United States v. Alexander*, Nos. 05-1542, 05-1632, 2007 WL 419796, at *3 (6th Cir. Feb. 9, 2007) (unpublished), and concluded that "a concealed-weapon conviction [does not] rise[] to the level of a 'violent felony.'" Because *Alexander* was reviewed under the plain error standard, the panel's conclusion on the issue was technically dicta; due to the conflicting precedents in our sister circuits and the lack of a leading case on the issue from this court, the district court's error in labeling a prior conviction for carrying a concealed weapon a "violent felony" under the ACCA was not "plain." *Asmo v. Keane, Inc.*, 471 F.3d 588, 599-600 (6th Cir. 2006) (observing that "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case" is not precedentially binding) (citation omitted). Moreover, *Alexander* was unpublished and, hence, not precedentially binding under the doctrine of stare decisis. *FDIC v. Dover*, 453 F.3d 710, 715 (6th Cir. 2006). Although we are not bound by *Alexander*, we agree with its well-reasoned analysis and join in its conclusion that a conviction for carrying a concealed weapon does not "involve[] conduct that presents a serious potential risk of physical injury to another" such that it should count as a violent felony under the ACCA.

**3**Although "crime of violence" and "violent felony" are terms of art whose definitions are not interchangeable, the operative language under § 4B1.2's definition of "crime of violence" is identical to the language used to define "violent felony" under 18 U.S.C. § 924. *See Oliver*, 20 F.3d at 417 ("The only language in either § 4B1.2 or § 924(e) that might implicate the level of violence involved in the possession of a firearm is that which proscribes 'conduct that presents a serious potential risk of physical injury to another.'"). Thus, although we have not yet considered whether the crime of being a felon in possession of a firearm is a "violent felony" as defined in 18 U.S.C. § 924, we find it instructive that this court has concluded that being a felon in possession of a firearm does not involve "conduct that presents a serious potential risk of physical injury to another."

or property of another," or that, "by its nature, involved a substantial risk that physical force may be used in the course of committing the offense." *Id.* (quoting 18 U.S.C. § 924(c)(3)). The BOP later amended its regulation to preclude inmates from receiving a sentence reduction "whose current offense is a felony . . . that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives." *Id.*

We held that the BOP's exclusion of possessory offenders from consideration of early release was improper. *Id.* at 655. After noting that "every section of Title 18 relies on a virtually identical definition of crime of violence," we observed that "[n]o section of the United States Code defines crimes of violence . . . to include 18 U.S.C. § 922(g) as a violent crime." *Id.* at 655-56.[4] We noted further that this court, "as well as a number of our sister courts of appeals," has held that the common definition of "crime of violence" does not include § 922(g) offenses. *Id.* at 656 (citing, *e.g.*, *United States v. Hardon*, 1998 U.S. App. LEXIS 12180 (6th Cir. June 4, 1998) (unpublished); *Royce v. Hahn*, 1998 U.S. App. LEXIS 10891 (3d Cir. May 29, 1998) (unpublished); *United States v. Doe*, 960 F.2d 221, 224 (1st Cir. 1992).

We also find a district court opinion arising from the Eastern District of Michigan, *United States v. Johnson*, 704 F. Supp. 1403 (E.D. Mich. 1989), *aff'd per curiam*, 900 F.2d 260 (6th Cir. 1990), instructive. In *Johnson*, the court considered the same issue that we are faced with today – whether the offense of carrying a concealed weapon is a violent felony under the ACCA. The court began its analysis by acknowledging its prior holding in *United States v. Jones*, 651 F. Supp. 1309, 1310 (E.D. Mich. 1987), where it had concluded previously that the offense of being a felon in possession of a firearm is a crime of violence.[5] In so doing, the *Jones* court identified the following factors which suggested that the possession of a firearm by a felon posed a "substantial risk that the felon will commit a violent act during the entire period of time that the felon possesses the firearm": (1) Congress considered convicted felons to be more likely to use firearms in an irresponsible manner than the general public; (2) due to their experience in the criminal justice system and to educational efforts by probation and parole officers, most convicted felons are aware that they are forbidden from possessing firearms and therefore have demonstrated little regard for the law when they impermissibly possess guns; (3) the illegal possession of a firearm is a continuing act that poses a continuing risk; and (4) convicted felons are more likely to commit additional felonies than are other members of the general public. *Id.* at 1310.

The *Johnson* court reasoned that "a closer analysis of *Jones* demonstrates that the concealed weapon offense . . . is not a 'violent felony' under the ACCA." *Johnson*, 704 F. Supp. at 1407. The court noted that of the four reasons for classifying the unlawful possession of a firearm by a felon as a predicate offense under the ACCA, three were based on the knowledge that the illegal actor was a convicted felon. *Id.* "When the generic crime of carrying a concealed weapon is placed under the same analytical microscope, the three arguments limited to activity by felons are inapposite. Only the third of the four *Jones* arguments speaks to the potentially violent nature of illicit gun possession by citizens in general, as opposed to felons." *Id.* Although *Johnson* is a district court opinion and, therefore, not binding on this court, we find it persuasive and concur in its analysis and holding.

Finally, we observe that in 2001, Michigan became a "right to carry" state, allowing qualified citizens to carry concealed weapons after receiving a license to do so from a county concealed weapon licensing board. Mich. Pub. Acts 2000, No. 381 (codified at MICH. COMP. LAWS § 28.425a-w). We hesitate to conclude that the act of carrying a concealed weapon poses such a serious

---

[4]Moreover, as the *Oliver* court pointed out, the application notes to U.S.S.G. § 4B1.2 specify that the term "crime of violence" does not include the offense of unlawful possession of a firearm by a felon.

[5]*Jones* predated our opinion in *Orr* by 11 years.

potential risk of physical injury to others when the Michigan Legislature now permits its citizens to carry concealed weapons, provided that they follow certain licensing requirements. We therefore affirm the district court's determination that Flores's December 19, 1987, conviction for carrying a concealed weapon was not a conviction for a "violent felony," and that Flores is not eligible to be sentenced as an armed career criminal under the ACCA.

## III.

The government next argues that the district court erred during resentencing on April 1, 2005, when it declined to make findings of fact concerning the sentence enhancements recommended by the PSR. In the original sentencing hearing, held on April 3, 2003, the district court applied the sentence enhancements and concluded that Flores's offense level was 32, subject to a sentencing range of 210 to 262 months. On remand, however, the district court stated that the Supreme Court's decision in *Booker* required the underlying facts supporting the sentence enhancements to be determined by the jury, and that Flores's offense level – without the enhancements – was 24, resulting in a sentencing range of 100 to 125 months. We agree with the government that the district court erred in so concluding.

We have held repeatedly that *Booker* and its precursor, *Apprendi v. New Jersey*, 530 U.S. 466 (2000), did not eliminate judicial fact-finding during sentencing. Rather, district courts must "calculate the Guideline range as they would have done prior to *Booker*, but then sentence defendants by taking into account all of the relevant factors of 18 U.S.C. § 3553, as well as the Guidelines range." *United States v. Stone*, 432 F.3d 651, 655 (6th Cir. 2005); *see also United States v. Mickens*, 453 F.3d 668, 673 (6th Cir. 2006). Moreover, *Apprendi* is not triggered so long as the judicial findings of fact do not result in the defendant receiving a sentence that exceeds the statutory maximum. *United States v. Hough*, 276 F.3d 884, 890 (6th Cir. 2002); *United States v. Schulte*, 264 F.3d 656, 660 (6th Cir. 2001); *see also United States v. Woods*, 39 F. App'x 72, 75 (6th Cir. 2002) (unpublished) ("This court has declined to require that enhancements imposed pursuant to the Guidelines be found by a jury beyond a reasonable doubt as long as the sentence imposed does not exceed the statutory maximum.").

Here, the district court was within its right to make findings of fact with regard to the sentence enhancements recommended by the PSR. The district court concluded properly that because Flores was not eligible to be sentenced as an armed career criminal pursuant to the ACCA, he was subject to the statutory maximum sentence of ten years as provided in 18 U.S.C. § 924(a)(2). Thus, had the district court made the findings of fact urged by the government and applied the sentence enhancements recommended by the PSR, no violation of *Apprendi* would have occurred so long as the district court sentenced Flores within the statutory maximum of ten years. We therefore remand this case back to the district court to make findings of fact and resentence Flores consistent with this opinion.

## IV.

Finally, in its brief, the government briefly and summarily argues that the district court's sentence was procedurally unreasonable for its failure to adequately consider all of the factors enumerated in 18 U.S.C. § 3553(a). Because the government has not developed this argument in its brief, it has been forfeited. *Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 448 (6th Cir. 2006) ("Plaintiff's one sentence argument to this effect is therefore insufficient to preserve this argument on appeal."). Although we do not remand this case for resentencing on this ground, but rather for the reasons articulated in section III, *supra*, we remind the district court that "district courts imposing sentences . . . are to be guided by the factors set forth in 18 U.S.C. § 3553(a)," *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir. 2005), and that this court "may conclude that a sentence is unreasonable when the district judge fails to consider the applicable Guidelines range

or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005) (internal quotations omitted).

V.

For the foregoing reasons, we affirm the district court's ruling that Flores is ineligible to be sentenced as an armed career criminal under the ACCA. We reverse the district court's failure to make findings of fact with regard to the sentence enhancements recommended by the PSR and remand for resentencing consistent with this opinion.